UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED FINANCIAL CASUALTY COMPANY                               PLAINTIFF

V.                         CASE NO. 5:24-CV-5094

KANSAS E3, LLC; RED LINE
CONTRACTORS, LLC; FIDEL RUA;
JASON FLYNN; and AMANDA FLYNN                                  DEFENDANTS

## OPINION AND ORDER

Now before the Court are Separate Defendants Kansas E3, LLC, Red Line Contractors, LLC, and Fidel Rua's (collectively "State-Court Defendants") Motion to Dismiss (Doc. 25), State-Court Defendants' Memorandum Brief in Support (Doc. 26), Plaintiff United Financial Casualty Company's Response in Opposition (Doc. 28), and United's supporting memorandum brief (Doc. 29). State-Court Defendants move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). On July 9, 2024, the Court held a Case Management Hearing and heard oral arguments on the Motion. For the reasons below, the Motion to Dismiss is **DENIED**.

This case was brought by United pursuant to the Declaratory Judgment Act. In August 2020, while driving a Mack truck, Fidel Rua allegedly rear ended a car owned by Amanda and Jason Flynn[1] that was being driven by Ms. Flynn. (Doc. 2, p. 9). On January 10, 2022, the Flynns sued Mr. Rua and Red Line in state court, alleging that Mr. Rua was

---

[1] Amanda Flynn and Jason Flynn failed to answer or otherwise respond to United's Complaint. Thus, on June 7, 2024, United filed an Affidavit in Support of Default (Doc. 20). On June 10, 2024, the Clerk made an Entry of Default against Amanda Flynn and Jason Flynn (Doc. 21).

1

driving a 2016 Mack dump truck in the scope of his work for Red Line at the time of the accident (the "Underlying Suit"). *Id.* at pp. 9–10; Doc. 2-3, pp. 1–2. The Flynns filed a First Amended State-Court Complaint on May 8, 2023, to allege that Mr. Rua was actually driving a 2010 Mack dump truck, and they filed a Second Amended State-Court Complaint on May 31, 2023, to include Kansas E3 as a defendant. (Doc. 2, p. 10; Doc. 2-4, p. 1; Doc. 2-5, pp. 1–2). According to the Complaint in this case, the 2010 Mack truck was owned by Kansas E3 and leased by Red Line, and the 2016 Mack truck was owned by Red Line. (Doc. 2, pp. 3, 9). Whether Mr. Rua was driving the 2010 or 2016 Mack truck is critical because the 2010 Mack truck was insured by United at the time of the accident and the 2016 Mack truck was not. *See id.* at pp. 3, 12; Doc. 2-1, p. 2.

Following the accident, Kansas E3—the named policy holder with United—and Mr. Rua filed a claim under the United policy. *See* Doc. 28-3 (reservation of rights letter sent from United to Kansas E3 and Mr. Rua on September 25, 2020).[2] United agreed to provide a defense under a reservation of rights but flagged that the 2016 Mack truck was not listed on the applicable policy. *Id.* at p. 1; *see also* Doc. 2, p. 10. The parties continue to dispute which truck was involved in the accident.

---

[2] The policy lists Kansas E3 as the named insured, and the reservation of rights letter was addressed to Kansas E3 and Mr. Rua. United has also provided several emails regarding coverage with insurance adjusters at Progressive—which the Court understands to be the same as United within the context of this case based on the policy and reservation of rights letter—and Nationwide. *See* Doc. 28-2. The emails with Nationwide discuss "Red [ L]ine's claims" and whether the insurer will be providing a "defense under Red Line." *Id.* at pp. 1–2. It is not clear from the current record whether Red Line made any insurance claims or how Nationwide fits into the facts. The Court does note that in the Complaint at bar, United seeks a declaration that it "is not required to provide a defense or indemnity" to Kansas E3, Mr. Rua, *or Red Line. See* Doc. 2, p. 12.

As United describes, the Underlying Suit was set to go to trial in early May 2024. (Doc. 29, p. 3). However, after a failed mediation in April 2024 and after United brought this declaratory action, the Flynns voluntarily nonsuited the Underlying Suit, which was dismissed without prejudice on May 3, 2024. *Id.* at p. 3; *see also* Doc. 15-1, p. 1. The Flynns have one year from that dismissal to refile. State-Court Defendants continue to assert that there is coverage under the policy, and there is no indication that Kansas E3 and Mr. Rua have withdrawn their demand for United to defend and indemnify them or that they have released United from any obligations under the policy. (Doc. 15, p. 3 (denying paragraph 36 of United's Complaint, which seeks a declaration that United has no duty to defend or indemnify Red Line, Kansas E3, or Rua)). Because the Underlying Suit was dismissed, State-Court Defendants argue that there is no longer a justiciable case or controversy as required by Article III, and, therefore, that this case should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

Both Article III, Section 2, of the Constitution and the Declaratory Judgment Act require that a case or controversy exist for a federal court to have jurisdiction. *See* 28 U.S.C. § 2201(a) (requiring "a case of actual controversy").

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Supreme Court has further clarified that the language of the Declaratory Judgment Act "limits federal court action to justiciable cases." *Pub. Water Supply Dist. No. 10 of Cass Cnty., Mo. v. City of*

*Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). Thus, the Eighth Circuit instructs courts to assess "the traditional justiciability requirement of ripeness" in these cases—a doctrine which "flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Id.* (quoting *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000)).

In determining whether a case is ripe, courts look to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 572–73 (citation omitted). Under Eighth Circuit precedent, a plaintiff "must necessarily satisfy both prongs to at least a minimal degree." *Id.* at 573 (quoting *Neb. Pub. Power Dist.*, 234 F.3d at 1039). "Whether a case is 'fit' depends on whether it would benefit from further factual development," and therefore, a "case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* To satisfy the hardship prong, "[i]t must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury"— "[a]bstract injury is not enough." *Id.* (second alteration in original). An injury must be "certainly impending," but a plaintiff need not wait until such injury actually occurs. *Id.*

The Eighth Circuit has found that a live justiciable controversy exists in the declaratory judgment context where, although an underlying liability suit has not yet been filed, the insured has made a demand for defense and indemnification and the insurer has disputed such coverage. *Aetna Ca. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992). The Eighth Circuit continues to favorably cite *Aetna* for this proposition. *See, e.g.*, *Clarendon Nat'l Ins. Co. v. United Fire & Cas. Co.*, 571 F.3d 749,

4

752 (8th Cir. 2009); *Scottsdale Ins. Co. v. Universal Crop. Prot. Alliance*, 620 F.3d 926, 934 (8th Cir. 2010).

The parties primarily rely on two insurance cases out of the Western District of Missouri to support their respective arguments: State-Court Defendants argue that *Acuity v. Exceptional Professionals, Inc.*, 2010 WL 11508580 (W.D. Mo. Feb. 3, 2010), is most on-point,[3] while United counters that *GEICO Casualty Co. v. Hollandsworth*, 2018 WL 3546238 (W.D. Mo. July 23, 2018), is most persuasive here. The Court agrees with United that *Acuity* is distinguishable and that *GEICO* is more instructive.

In *Acuity*, the court found that there was no justiciable controversy because the underlying case had been dismissed, the defendants (the insureds) had released the plaintiff (the insurer) from any obligation to defend the underlying suit, and the defendants had withdrawn their demand for a defense. 2010 WL 11508580, at *1. Thus, "With no pending underlying lawsuit, no immediate request for a defense, and no present threat of

---

[3] State-Court Defendants also cite *Marine Equipment Management Company v. United States*, 4 F.3d 643 (8th Cir. 1993) to argue there is no case or controversy in the declaratory judgment action at bar. *Marine Equipment,* however, is not on-point. There, the court was asked to declare that a sunken barge had been "abandoned" and thus the duty to remove it shifted from the owner of the barge to the United States and to declare that the original owners of the barge were not liable to unknown future litigants who may claim damage from the barge.

In finding that there was no controversy as to abandonment, the court reasoned that "[w]hile [the owners] were at one time asked to mark and remove their sunken barge, they face[d] no compulsion at [the time of the action]." *Id.* at 646. And in finding there was no jurisdiction to declare that the owners were not liable to future litigants, the court noted that no one had made any claims of damage from the barge and such claims were unlikely due to the barge likely having sunk beneath the river bed, so it could not "be said that there [was] even a substantial probability that such claims [would] ever be made." *Id.* at 647. In contrast, here Kansas E3 and Mr. Rua's demand for coverage remains outstanding and there has been no factual development in the case that makes the Flynns' refiling of the Underlying Suit unlikely.

5

litigation, there [was] no longer a substantial controversy of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993)).

In *GEICO*, the court ultimately found that there was a justiciable controversy sufficient to establish jurisdiction in the declaratory judgment action despite the underlying suit having been dismissed without prejudice. 2018 WL 3546238, at *1. The court reasoned that the fitness prong was satisfied because the declaratory judgment action presented "purely a question of law"—whether there was coverage under the policy. *Id.* at *2. And the hardship prong was met because "the dispute between the Defendants [was] not resolved," the underlying plaintiff had not released the insured or GEICO from liability, and the insured "had not withdrawn her claim against GEICO" or "stated she [would] not pursue coverage under the GEICO policy." *Id.* The court distinguished these facts from *Acuity*, where the insureds "were no longer pursuing their claims against the insurance company." *Id.* (citing *Acuity*, 2010 WL 11508580, at *1). The Court finds *GEICO* more persuasive than *Acuity* in that the insureds in this case continue to argue that there is coverage and have not withdrawn their demand for a defense or indemnification. Not only does this finding acknowledge the greater factual similarities between the instant case and *GEICO*, it is also most consistent with Eighth Circuit precedent such as *Aetna*.

Here, though the Underlying Suit has been dismissed, Kansas E3 and Mr. Rua have not withdrawn their request for defense or indemnification, United and State-Court Defendants continue to dispute whether coverage exists, and the Flynns may refile their suit so long as they do so in the allotted timeframe. This case turns on the legal question of coverage and is not contingent on future possibilities. Thus, the Court finds that United

has met the fitness prong. Additionally, United has met the hardship prong. From what the Court can tell, Kansas E3 and Mr. Rua continue to demand coverage and, considering the underlying dispute remains unresolved and the Flynns have already filed suit once, the injury to United is impending. "[H]ardship would beset" United were it "forced to wait until" the Flynns refile the Underlying Suit "to determine its duty to defend, as the duty arises when there is a potential or possible liability to pay based on the facts at the outset of the case." *Am. Strategic Ins. Corp. v. Goodell*, 662 F. Supp. 3d 1012, 1019–20 (W.D. Mo. 2023).

Therefore, because the Court finds there exists a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy" to establish jurisdiction, *see Maryland Cas. Co.*, 312 U.S. at 273, **IT IS HEREBY ORDERED** that State-Court Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED** on this 9th day of July, 2024.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

7